CLOSED

# U.S. District Court
## SOUTHERN DISTRICT OF TEXAS (Houston)
## CRIMINAL DOCKET FOR CASE #: <u>4:25−mj−00720</u>−1
### *Internal Use Only*

Case title: USA v. Austin

Date Filed: 12/03/2025

Other court case number: 25−MAG−3441 Southern District of New York

Date Terminated: 12/10/2025

---

Assigned to: Magistrate Judge Christina A Bryan

**<u>Defendant (1)</u>**

**Kelli Diann Austin**
*In Custody*
*TERMINATED: 12/10/2025*

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

| **<u>Highest Offense Level (Opening)</u>** | |
|---|---|
| None | |

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

| **<u>Highest Offense Level (Terminated)</u>** | |
|---|---|
| None | |

| **<u>Complaints</u>** | **<u>Disposition</u>** |
|---|---|
| Conspiracy to Commit Wire Fraud 18:1349.F, Wire Fraud 18:1343.F | |

---

**<u>Plaintiff</u>**

**USA**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/02/2025 | | Arrest (Rule 40) of Kelli Diann Austin, filed. (abb4) (Entered: 12/03/2025) |

| 12/03/2025 | 1 | Criminal Complaint Southern District of New York – New York Division as to Kelli Diann Austin, filed. (abb4) (Entered: 12/03/2025) |
|---|---|---|
| 12/03/2025 | | Set Hearing as to Kelli Diann Austin: Initial Appearance – Rule 40 set for 12/3/2025 at 10:00 AM in Courtroom 701 before Magistrate Judge Christina A Bryan (abb4) (Entered: 12/03/2025) |
| 12/03/2025 | 2 | Arrest Warrant issued 10/29/2025; Returned Executed on 12/02/2025 as to Kelli Diann Austin. Defendant was arrested in Houston, TX. Document restricted from PACER under privacy policy, filed. (abb4) (Entered: 12/03/2025) |
| 12/03/2025 | | Arrest of Kelli Diann Austin, filed. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | | INITIAL APPEARANCE IN RULE 5(c)(3) Minute Entry for proceedings held on 12/3/2025 before Magistrate Judge Christina A Bryan as to Kelli Diann Austin. Defendant first appearance on Complaint from the New York Southern District Court 25–MJ–3441 and advised of rights/charges. Defendant appeared with counsel. Order appointing FPD for limited purpose, Order of Temporary Detention to be entered. Bond Hearing set for 12/3/2025 at 02:00 PM in Courtroom 701 before Magistrate Judge Christina A Bryan Defendant advised of retained counsel in New York. Bond condtions to be set. Appearances: AUSA Francisco Jose Rodriguez for USA; AFPD Devin Prater for Defendant.(ERO:Yes) (Interpreter: No) (Pretrial Officer: Francesca Sonne) Defendant remanded to custody, filed. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | 3 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Kelli Diann Austin FOR LIMITED PURPOSE. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | 4 | BRADY ORDER on Rule 5(f) as to Kelli Diann Austin. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | 5 | Order of Temporary Detention Pending Hearing as to Kelli Diann Austin Bond Hearing set for 12/3/2025 at 02:00 PM in Courtroom 701 before Magistrate Judge Christina A Bryan ( Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | 6 | Pretrial Services Report (Sealed) as to Kelli Diann Austin, filed. (kh4) (Entered: 12/03/2025) |
| 12/03/2025 | | BOND HEARING Minute Entry for proceedings held on 12/3/2025 before Magistrate Judge Christina A Bryan as to Kelli Diann Austin. Defendant appeared with counsel. Bond set, $50,000 Unsecured Bond, Defendant advised of conditions of release, Defendant on bond to appear in originating district New York Southern District Court, New York Division for hearing set on at,, 500 Pearl Street, New York, NY 10007. Defendant given a bond and to be handed over to Chambers County pursuant to active arrest warrant. Appearances: AUSA Francisco Jose Rodriguez for USA; AFPD Devin Prater for Defendant.(ERO:Yes) (Interpreter: No) (Pretrial Officer: Francesca Sonne) Defendant remanded to custody, filed. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | 7 | BRADY ORDER on Rule 5(f) as to Kelli Diann Austin. (Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 12/03/2025) |
| 12/03/2025 | 8 | ORDER for Defendant to Appear in the District Where Charges Are Pending and Transferring Bail as to Kelli Diann Austin. The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending. Charging District: New York Southern District Court, New York Division, |

| | | 25–MJ–3441. ( Signed by Magistrate Judge Christina A Bryan) Parties notified. (mem4) (Entered: 12/03/2025) |
|---|---|---|
| 12/03/2025 | 9 | Unsecured Bond Entered as to Kelli Diann Austin in amount of $ 50,000,, filed. (mem4) (Entered: 12/10/2025) |
| 12/03/2025 | 10 | ORDER Setting Conditions of Release as to Kelli Diann Austin. ( Signed by Magistrate Judge Christina A Bryan) (Attachments: # 1 Unredacted attachment) Parties notified. (mem4) (Entered: 12/10/2025) |

AUSA: Angela Zhu

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 25 MAG 3441

UNITED STATES OF AMERICA

v.

KELLI DIANN AUSTIN,

Defendant.

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 1343, 1349

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

TODD KANESHIRO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

1.     From at least in or about June 2020 up to and including at least in or about July 2021, in the Southern District of New York and elsewhere, KELLI DIANN AUSTIN, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2.     It was a part and an object of the conspiracy that KELLI DIANN AUSTIN, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which did affect a financial institution, in violation of Title 18, United States Code, Section 1343, to wit, AUSTIN and others agreed to engage in a scheme to obtain loans from various financial institutions guaranteed by the U.S. Small Business Administration ("SBA"), through the SBA's Paycheck Protection Program ("PPP"), by submitting fraudulent applications for PPP loans and using the loan proceeds for unauthorized purposes, and they engaged in and caused others to engage in telephone calls, the review and approval of loan applications, and wire transfers in the Southern District of New York, and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

3.     From at least in or about June 2020 up to and including at least in or about July 2021, in the Southern District of New York and elsewhere, KELLI DIANN AUSTIN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and

for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, AUSTIN obtained loans from various financial institutions guaranteed by the SBA, through the SBA's PPP, by submitting fraudulent applications for PPP loans, and engaged in and caused others to engage in telephone calls, the review and approval of loan applications, and wire transfers in the Southern District of New York, and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1343.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I am a Special Agent with the FBI and have been since in or about 2016.  During my time with the FBI, I have worked on numerous investigations of wire fraud and other white-collar crimes.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my participation in the investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Fraudulent Conduct

5.      As set forth below, from at least in or about June 2020 up to and including at least in or about July 2021, KELLI DIANN AUSTIN, the defendant, engaged in a scheme with a co-conspirator ("CC-1"), and others known and unknown, to fraudulently obtain PPP funds from various financial institutions.  AUSTIN submitted to the SBA at least four PPP loan applications, each of which contained materially false and fraudulent representations (the "Fraudulent PPP Applications"), including that the loans would be used for payroll and other business expenses. The Fraudulent PPP Applications sought PPP loans for three different entities.  In total, after submitting the Fraudulent PPP Applications, AUSTIN obtained approximately $1.7 million in PPP loans, which she then used for personal and unauthorized purposes, including by purchasing luxury vehicles and a house for a family member as well as by making large payments to individuals who are not AUSTIN's employees.

## The Paycheck Protection Program

6.      Based on my training and experience and my review of publicly available information, I know the following, in substance and in part:

a.      The PPP was enacted into federal law as part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") in March 2020.  Among other things, the CARES Act authorized billions of dollars in forgivable loans to small businesses for job retention and certain other business expenses through the PPP.  On or about December 27, 2020, the Consolidated Appropriations Act of 2021, which included the Economic Aid to Hard-Hit Small Businesses, Nonprofit, and Venues Act (the "Relief Act") was signed into law, which allowed

certain businesses that had already obtained a PPP loan to obtain an additional "second draw" PPP loan. The Relief Act also re-opened the application period for "first draw" PPP loans to businesses that had not been approved for "first draw" PPP loans prior to August 8, 2020, or who may have been eligible to receive more funds during the "first draw" period than they actually received.

       b.      Businesses that obtained PPP loans were required to use those loans for their payroll costs, mortgage interest, rent, and/or utilities, among other specified expenses. Pursuant to the CARES Act, the amount of PPP funds a business was eligible to receive was determined by the number of employees and average payroll costs. The PPP is overseen by the SBA, which has authority over all PPP loans, but individual PPP loans were issued by approved commercial lenders, who would receive and process PPP applications and supporting documentation.

       c.      Borrowers through the PPP were also eligible to apply for loan forgiveness once they had used all loan proceeds for which forgiveness was requested.

### June 25, 2020 Loan Application

7.      Based on my participation in this investigation, including my review of records provided by a bank ("Bank-1"), I have learned the following, in substance and in part:

       a.      On or about June 25, 2020, KELLI DIANN AUSTIN, the defendant, applied for an approximately $458,600 PPP loan on behalf of "UNCOMMONCENTS.COM, INC." (the "June 25, 2020 Loan Application").

       b.      In the June 25, 2020 Loan Application, AUSTIN provided the following information, in substance and in part: (i) Uncommoncents.com, Inc., was established on or about October 7, 2015, had a primary business address at a residential home in Texas (the "Austin Residence"), had 15 employees, and had average monthly payroll expenses of approximately $183,440; (ii) AUSTIN was the President and sole owner of Uncommoncents.com, Inc.; and (iii) the stated purpose of the PPP loan was for payroll, rent/mortgage interest, and utilities for Uncommoncents.com, Inc.

       c.      In the June 25, 2020 Loan Application, AUSTIN further certified that the loan for which she was applying would be "used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule" and that she understood "that if the funds are knowingly used for unauthorized purposes, the federal government may hold [her] legally liable, such as for charges of fraud."

       d.      In the June 25, 2020 Loan Application, AUSTIN further certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," and that she understood "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law," including certain provisions of federal law.

       e.      In connection with the June 25, 2020 Loan Application, AUSTIN provided a front and back image of a Texas State Identification Card, which listed an address at the Austin Residence, and which depicts what appears to be AUSTIN's handwritten signature underneath a

photo of an individual who, based on my review of law enforcement photographs and my interactions in person with AUSTIN, I believe to be AUSTIN (the "AUSTIN ID Card").

8.    Based on my conversations with law enforcement officers and with representatives of the Texas Workforce Commission,[1] I have learned that Texas employers are required to file quarterly wage reports for their employees.   Records provided by the Texas Workforce Commission showed no record of employee wages for Uncommoncents.com, Inc.

9.    Based on my review of records provided by Bank-1 in connection with the June 25, 2020 Loan Application, I have learned the following, in substance and in part:

   a.    On or about July 1, 2020, KELLI DIANN AUSTIN, the defendant, entered into an agreement with Bank-1 for an approximately $458,600 loan issued by Bank-1, representing the PPP loan granted as a result of the June 25, 2020 Loan Application.   The loan agreement includes a signature for AUSTIN, which is consistent in appearance with the signature on the AUSTIN ID Card.

   b.    On or about July 1, 2020, AUSTIN signed an "Electronic Funds Transfer Authorization Form" in order to receive the loan.   The handwritten signature on this form is consistent in appearance with the signature on the AUSTIN ID Card.   AUSTIN provided to Bank-1 a savings account number ending in -1259 (the "1259 AUSTIN Account") at another bank ("Bank-2") for the loan transfer.   On or about July 2, 2020, an attempted transfer for the PPP loan to the 1259 AUSTIN Account was rejected due to a "name mismatch."

   c.    On or about July 5, 2020, AUSTIN signed another "Electronic Funds Transfer Authorization Form."   The handwritten signature on this form is consistent in appearance with the signature on the AUSTIN ID Card.   AUSTIN provided a checking account number ending in 6221 (the "6221 Account") at another bank ("Bank-3") for the PPP loan transfer.

10.    Based on my review of documents from Bank-1 and my conversation with an employee at Bank-1 ("Bank-1 Employee"), I learned, in substance and in part, that Bank-1 is headquartered in Manhattan, New York, and that the Bank-1 Employee was personally involved in communications about the loan described *supra* ¶ 9 while working in the Southern District of New York.

11.    Based on my review of records from Bank-3, I have learned the following about the 6221 Account, in substance and in part:

   a.    The 6221 Account was opened on or about July 6, 2020, with an initial deposit of approximately $500.   The 6221 Account was opened under the name of an individual ("Individual-1"), who has the same last name as KELLI DIANN AUSTIN, the defendant, and the opening documents listed the account holder as "d/b/a Uncommoncents.com" with an address of the Austin Residence.   Individual-1 is listed in opening documents for the 6221 Account as the "Sole Proprietor" of Uncommoncents.com.

---

[1] The Texas Workforce Commission is a government agency that provides unemployment benefits and other employment-related services, and which requires employers to report wages and pay taxes in connection with those benefits.

b.      On or about July 7, 2020, the 6221 Account received a wire transfer in the amount of approximately $458,600 from Bank-1, *i.e.*, the loan for which AUSTIN applied in the June 25, 2020 Loan Application.

c.      On or about July 8, 2020, four cashier's checks were issued from the 6221 Account for an aggregate amount of approximately $388,000, as follows: (i) approximately $110,000 to an individual ("Individual-2"); (ii) approximately $110,000 to the estate of an individual with the same last name as Individual-2; (iii) approximately $75,000 to an investment company; and (iv) approximately $93,000 to "Sunray Holdings," described further herein. None of these payments appear to be for purposes authorized under the PPP.

d.      On or about July 22, 2020, a check in the amount of approximately $9,182 was written from the 6221 Account to Sunray Holdings.

e.      Continuing through in or about October 2020, additional withdrawals and purchases were made from the 6221 Account, none of which appear to be consistent with any approved PPP expense. As of on or about November 30, 2020, the 6221 Account had a negative balance.

f.      The only deposits into the 6221 Account, aside from interest accrued and ATM surcharge rebates, were the approximately $500 initial account opening deposit and the approximately $458,600 PPP loan.

### January 14, 2021 Loan Application

12.      Based on my review of records provided by Bank-1, I have learned the following, in substance and in part:

a.      On or about January 14, 2021, KELLI DIANN AUSTIN, the defendant, applied for an approximately $206,250 PPP loan as "Kelli Austin D/B/A Camelot Nevada Trust" (the "January 14, 2021 Loan Application").

b.      In the January 14, 2021 Loan Application, AUSTIN provided the following information, in substance and in part: (i) Camelot Nevada Trust was established on or about June 12, 2018, had a primary business address at the Austin Residence, had 14 employees, and had average monthly payroll expenses of approximately $82,500; (ii) AUSTIN was the beneficial owner and control person of Camelot Nevada Trust with a 95% ownership interest; and (iii) the stated purpose of the PPP loan was for payroll, rent/mortgage interest, utilities, covered operations expenses, covered supplier costs, and covered worker protection expenditures.

c.      In the January 14, 2021 Loan Application, AUSTIN answered in the negative that "the Applicant or any owner of the Applicant" was "an owner of any other business, or [had] common management with any other business."

d.      In support of the January 14, 2021 Loan Application, AUSTIN provided account statements for January 2021, February 2021, and March 2021, for an account ending in -1103 at Bank-2 (the "1103 Account"), which was purportedly held in the name of Camelot Nevada Trust.

e.     In the January 14, 2021 Loan Application, the contact information listed was an individual ("Individual-3"), who was purportedly the accountant for "Camelot Financial." AUSTIN signed the January 14, 2021 Loan Application as the borrower for the loan.

f.     In the January 14, 2021 Loan Application, AUSTIN made substantially the same certifications as to the use of PPP loan funds and the legal penalties as described *supra* ¶¶ 7(c)–(d).

13.     Based on records provided by the Texas Workforce Commission, there is no record of employee wages for Camelot Nevada Trust.

14.     Based on my review of records provided by Bank-2, I have learned that the account holder of the 1103 Account is not Camelot Nevada Trust, as reflected by the documents submitted by KELLI DIANN AUSTIN, the defendant, in support of the January 14, 2021 Loan Application, but rather, a different entity whose sole proprietor is listed as Individual-1.  That is, the loan documents submitted by AUSTIN appear to have been fraudulently altered.

15.     Based on a review of records from Bank-2, records provided by the Texas Workforce Commission, and publicly available information, I have learned the following, in substance and in part, about an account ending in -5113 (the "5113 AUSTIN Camelot Account"):

a.     The 5113 AUSTIN Camelot Account was opened on or about May 3, 2021, under a "DBA" name of "Camelot Nevada Tr," with KELLI DIANN AUSTIN, the defendant, listed as its sole proprietor.  On or about May 3, 2021, an opening deposit was made in the amount of approximately $25.

b.     On or about June 30, 2021, the 5113 AUSTIN Camelot Account received a wire transfer from Bank-1 in the amount of approximately $206,250, representing the PPP loan granted as a result of the January 14, 2021 Loan Application.  At that time, no other transaction activity had occurred in the 5113 AUSTIN Camelot Account.

c.     On or about the same day, June 30, 2021, an online bank transfer in the amount of approximately $75,000 was initiated from the 5113 AUSTIN Camelot Account to a checking account ending in 6444 (the "6444 AUSTIN Account").  Based on my review of records provided by Bank-2 for the 6444 AUSTIN Account, I have learned that the 6444 AUSTIN Account is held in the name of AUSTIN with an address at the Austin Residence.

d.     Also on or about June 30, 2021, a wire payment in the amount of approximately $59,354.32 was made from the 5113 AUSTIN Camelot Account to an account at Bank-2 ending in -3055 (the "Attorney Account"), held by an attorney in Manhattan, New York (the "Attorney").

e.     By on or about August 31, 2021, the balance in the 5113 AUSTIN Camelot Account was approximately $1.56. Between on or about July 1, 2021, and on or about August 31, 2021, the following total transfers were made from the 5113 AUSTIN Camelot Account, in addition to those described above:

    i.       Approximately $14,550 was transferred to accounts held under the name of CC-1. There is no record of CC-1 receiving wages from Camelot Nevada Trust or from Uncommoncents.com.

    ii.       Approximately $32,969.12 was transferred to the 6444 AUSTIN Account.

    iii.     Approximately $1,850 was transferred to an account ending in -5100 (the "5100 AUSTIN Camelot Account").

    iv.     Approximately $8,650 was transferred to bank accounts held under "Austin."

    v.       Approximately $6,500 was transferred to bank accounts held under the name of a family member of AUSTIN ("Individual-4"), discussed *infra* ¶¶ 25–26.

    vi.     Approximately $4,000 was transferred to an account held under the name of an individual whose last name is the same as CC-1's maiden name ("Individual-5"). There is no record of Individual-5 receiving wages from Camelot Nevada Trust or from Uncommoncents.com.

### February 19, 2021 Loan Application

16.    Based on my review of records provided by Bank-1, I have learned the following, in substance and in part:

    a.    On or about February 19, 2021, KELLI DIANN AUSTIN, the defendant, applied for an approximately $642,040 PPP loan on behalf of "UNCOMMONCENTS.COM, INC." (the "February 19, 2021 Loan Application").

    b.    In the February 19, 2021 Loan Application, AUSTIN, the listed borrower on the application, provided the following information, in substance and in part: (i) Uncommoncents.com, Inc. was established in or about 2016, had a primary business address at the Austin Residence, had 20 employees, and had average monthly payroll expenses of approximately $183,440; (ii) AUSTIN was the sole owner; and (iii) the stated purpose of the PPP loan was for payroll, rent/mortgage interest, utilities, covered operations expenditures, covered property damage, covered supplier costs, and covered worker protection expenditures.

    c.    In the February 19, 2021 Loan Application, AUSTIN answered in the negative that "the Applicant or any owner of the Applicant" was "an owner of any other business, or [had] common management with any other business."

    d.    In support of the February 19, 2021 Loan Application, AUSTIN provided account statements for December 2020, January 2021, and February 2021, purportedly for an account ending in -5481 at Bank-2 (the "5481 Uncommoncents Account"), which was purportedly held in the name of Uncommoncents.com.

e.     In the February 19, 2021 Loan Application, AUSTIN further certified that the funds for which she was applying would be used for certain specified expenses under the PPP rules and that she understood "that if the funds are knowingly used for unauthorized purposes, the federal government may hold [her] legally liable, such as for charges of fraud." AUSTIN also made substantially the same certifications as to the legal penalties as described *supra* ¶¶ 7(c)–(d).

17.     Based on my review of records provided by Bank-1 in connection with the February 19, 2021 Loan Application, I have learned that, on or about March 18, 2021, KELLI DIANN AUSTIN, the defendant, entered into an agreement with Bank-1 for a $642,040 loan, issued by Bank-1. The digital image of a handwritten signature on the loan agreement is consistent in appearance with the signature on the AUSTIN ID Card.

18.     Based on my review of records from Bank-2, I have learned the following, in substance and in part:

a.     On or about March 17, 2021, the 5481 Uncommoncents Account was opened under the name Uncommoncents.com, Inc., with an authorized signor ("Individual-6"). Its beginning balance was zero.

b.     The 5481 Uncommoncents Account had no December 2020, January 2021, or February 2021 statements, and therefore, the supporting documents KELLI DIANN AUSTIN, the defendant, submitted in support of the February 19, 2021 Loan Application were fabricated. Bank-2 records in fact show that the statements submitted by AUSTIN in connection with the February 19, 2021 Loan Application were from a different bank account held by an unrelated party at Bank-2, with a different account name and number, and had been modified to appear as though the statements were associated with the 5481 Uncommoncents Account.

c.     On or about March 22, 2021, the 5481 Uncommoncents Account received a wire from Bank-1 in the amount of approximately $642,040, representing the PPP loan funds resulting from the February 19, 2021 Loan Application.

d.     On or about March 23, 2021, a transfer in the amount of approximately $450,000 was made from the 5481 Uncommoncents Account to an account ending in -1259, which is the same 1259 AUSTIN Account to which AUSTIN had initially attempted (but failed) to receive loan funds relating to the earlier June 25, 2020 Loan Application. *See supra* ¶ 9(b).

e.     Between on or about March 23, 2021, and on or about April 30, 2021, the 5481 Uncommoncents Account transferred an additional approximately $149,520 over approximately 23 separate transactions into the 1259 AUSTIN Account.

19.     Based on my review of records from Bank-2, I have learned the following, in substance and in part, about the 1259 AUSTIN Account, which received the above-described funds:

a.     The 1259 AUSTIN Account was opened on or about May 25, 2018, in the name of KELLI DIANN AUSTIN, the defendant. On or about March 22, 2021, the account balance was approximately $2,742.62.

     b.     Between on or about March 23, 2021, and on or about April 30, 2021, the 1259 AUSTIN Account received the above-described transfers from the 5481 Uncommoncents Account.

     c.     On or about March 23, 2021, approximately $50,000 was transferred to Mercedes Benz from the 1259 AUSTIN Account, and two checks were written from the 1259 AUSTIN Account to Mercedes Benz, in the amounts of approximately $78,520.31, and approximately $99,691.15. On or about the same day, approximately $185,000 was transferred from the 1259 AUSTIN Account to CC-1.

     d.     On or about March 25, 2021, approximately $16,000 was wired from the 1259 AUSTIN Account, with the beneficiary listed as AUSTIN's father.

     e.     Continuing through in or about April 5, 2021, additional transfers were made from the 1259 AUSTIN Account that appeared to be inconsistent with any approved PPP loan purpose.

20.     Based on my review of records provided by Mercedes Benz, I have learned the following, in substance and in part:

     a.     On or about March 20, 2021, an individual with the same last name as KELLI DIANN AUSTIN, the defendant, ("Individual-7") who reportedly resides at the Austin Residence, purchased a 2021 Mercedes Benz E350W for approximately $78,520.31. The vehicle was paid for by a cashier's check dated March 23, 2021, with AUSTIN listed as the remitter.

     b.     On or about March 20, 2021, Uncommoncents.com purchased a 2021 Mercedes Benz GLS450W4 for approximately $99,691.15. The purchase agreement was signed by AUSTIN. The vehicle was paid for by a cashier's check dated March 23, 2021, with AUSTIN listed as the remitter.

     c.     On or about March 23, 2021, CC-1 purchased a 2021 Mercedes Benz GLS450W1 for approximately $101,673.10. The purchase agreement was signed by CC-1. CC-1 reportedly resides at an address on the same street as the Austin Residence. The vehicle was paid for by a combination of the following payments:

     i.     An approximately $50,000 debit charge made under AUSTIN's name, which was verified by PIN;

     ii.     One debit charge and two checks made payable by CC-1, totaling approximately $51,673.10.

### March 24, 2021 Loan Application

21.     Based on my review of records provided by Bank-1, I have learned the following, in substance and in part:

     a.     On or about March 24, 2021, KELLI DIANN AUSTIN, the defendant, applied for an approximately $387,257.32 PPP loan on behalf of an entity purporting to be a

partnership under the business name "CAMELOT NEVADA TRUST" (the "March 24, 2021 Loan Application").

b. In the March 24, 2021 Loan Application, AUSTIN provided the following information, in substance and in part: (i) Camelot Nevada Trust was established in or about 2011, had a primary business address at the Austin Residence, had 20 employees, and had average monthly payroll expenses of approximately $154,902.93; (ii) AUSTIN was the sole beneficial owner; and (iii) the stated purpose of the PPP loan was for payroll, rent/mortgage interest, utilities, covered operations expenditures, covered property damage, covered supplier costs, and covered worker protection expenditures.

c. In the March 24, 2021 Loan Application, AUSTIN answered in the negative that "the Applicant or any owner of the Applicant" was "an owner of any other business, or [had] common management with any other business."

d. In support of the March 24, 2021 Loan Application, AUSTIN provided account statements for January 2021, February 2021, and March 2021, for an account ending in - 0961 at a bank ("Bank-4") (the "0961 Account"), which was purportedly held in the name of Camelot Nevada Trust with an address at the Austin Residence. The February 2021 statement, as an example, purportedly reflected approximately $71,442 in payroll expenses, with a balance of approximately $51,170.

e. In the March 24, 2021 Loan Application, AUSTIN made substantially the same certifications as to the use of PPP loan funds and the legal penalties as described *supra* ¶ 16(e).

f. The March 24, 2021 Loan Application bears a digital image of a handwritten signature that is consistent in appearance with the signature on the AUSTIN ID Card.

22. Based on my review of records provided by Bank-4, I have learned the following about the 0961 Account, in substance and in part:

a. The account holder of the 0961 Account is Individual-3, "DBA Camelot Nevada Trust." The February 2021 statement reflected only an approximately $10 maintenance fee and no payroll expenditures, and reflected an account balance of approximately $170. That is, the loan documents submitted by KELLI DIANN AUSTIN, the defendant, in connection with the March 24, 2021 Loan Application appear to have been fraudulently altered to reflect payroll expenses and a higher account balance.

23. Based on my conversations with employees of Bank-1 and my review of toll records provided by a phone service provider, I have learned that, from in or about May 2021 to June 2021, a phone number used by KELLI DIANN AUSTIN, the defendant (the "Austin Phone Number"[2]) called the Manhattan headquarters of Bank-1, Bank-1 Employee's office number, and Bank-1 Employee's cellphone number, respectively.

---

[2] Phone service provider records indicate that the billing party for the Austin Phone Number is CC-1; however, the "user information" in those records lists AUSTIN as the user of the Austin Phone Number.

24.     Based on my review of records provided by Bank-1 in connection with the March 24, 2021 Loan Application, I have learned that on or about June 30, 2021, Bank-1 issued a wire transfer in the amount of approximately $387,257.32 to "Camelot Nevada Trust DBA Camelot Financial" using the 5100 AUSTIN Camelot Account, which is the same account that received funds from the 5113 AUSTIN Camelot Account from proceeds of the loan resulting from the January 14, 2021 Loan Application. *See supra* ¶ 15(e)(iii).

25.     Based on my review of records provided by Bank-2, I have learned the following about the 5100 AUSTIN Camelot Account, in substance and in part:

        a.      The 5100 AUSTIN Camelot Account was opened on or about April 29, 2021.  It is held in the name of KELLI DIANN AUSTIN, the defendant, as the sole proprietor "DBA Camelot Nevada Tr."  On or about June 28, 2021, the account balance was approximately $10.

        b.      On or about June 30, 2021, the above-described wire in the amount of approximately $387,257.32 was received into the 5100 AUSTIN Camelot Account from the lending bank, Bank-1, reflecting PPP loan funds resulting from the March 24, 2021 Loan Application.

        c.      On or about July 1, 2021, an approximately $370,000 wire transfer was sent from the 5100 AUSTIN Camelot Account to an account held under the name of Individual-4, who had previously received funds from AUSTIN as described above. *See supra* ¶ 15(e)(v).  On or about July 2, 2021, another approximately $10,500 wire transfer was sent from the 5100 AUSTIN Camelot Account to Individual-4.

26.     Based on my conversation with Individual-4 on or about June 17, 2022, I have learned, in substance and in part, that Individual-4 is a family member of KELLI DIANN AUSTIN, the defendant, and that Individual-4 received approximately $405,000 from AUSTIN, which Individual-4 understood to be a gift to buy Individual-4's home.  Part of these funds were received as an approximately $370,000 wire transfer to Individual-4 with the memo "Payroll Disbursement."  Individual-4 did not understand the memo, as the funds were not for any payroll disbursement.  AUSTIN told Individual-4, in substance and in part, that the proceeds came from stock sales.

## The 5639 CC-1 Sunray Holdings Account

27.     Based on my review of records provided by a bank ("Bank-5"), I have learned the following about an account ending in -5639 (the "5639 CC-1 Sunray Holdings Account"), in substance and in part:

        a.      The 5639 CC-1 Sunray Holdings Account was opened on or about January 6, 2017.  The owner of the 5639 CC-1 Sunray Holdings Account is CC-1.  The 5639 CC-1 Sunray Holdings Account has a "DBA" name of "Sunray Holdings or Uncommoncents.com."  The account address is the CC-1 Residence.

        b.      On or about July 8, 2020, the 5639 CC-1 Sunray Holdings Account received a check in the amount of approximately $93,000 corresponding to the check described *supra* ¶ 11(c), which came from loan proceeds in connection with the June 25, 2020 Loan Application.

11

Also on or about July 8, 2020, the 5639 CC-1 Sunray Holdings Account issued a check to Volkswagen in the amount of approximately $53,478.27. The memo on the check was for an "Atlas Cross Sport," which is a model of Volkswagen vehicle.

          c.     On or about July 22, 2020, the 5639 CC-1 Sunray Holdings Account received a check in the amount of approximately $9,182, which, as described *supra* ¶ 11(d) came from loan proceeds in connection with the June 25, 2020 Loan Application. Also on or about July 22, 2020, the 5639 CC-1 Sunray Holdings Account issued a check to "Cash" in the amount of approximately $9,500. The check was signed by CC-1.

          d.     On or about August 10, 2020, the 5639 CC-1 Sunray Holdings Account received a wire transfer with description "SBA Loan" in the amount of approximately $20,833.

    28.    Based on records provided by a bank ("Bank-6"), the approximately $20,833 wire transfer dated on or about August 10, 2020, reflects loan funds from a PPP loan for which CC-1 applied.

    29.    Based on my interview of CC-1, on or about April 18, 2022, CC-1 stated, in substance and in part, that CC-1 had never applied for a PPP loan, in contradiction to the Bank-6 records described above. At this interview, I observed that CC-1 drove a Mercedes Benz SUV. During the course of this interview, KELLI DIANN AUSTIN, the defendant, also arrived at the place of the interview of CC-1, also driving a Mercedes Benz SUV.

    WHEREFORE, I respectfully request that a warrant be issued for the arrest of KELLI DIANN AUSTIN, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

*s/ Todd Kaneshiro by the Court with permission*

                              _____
                              TODD KANESHIRO
                              Special Agent
                              Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 29th day of
October.

_____
THE HONORABLE BARBARA MOSES
United States Magistrate Judge
Southern District of New York

```
MIME-Version:1.0
From:DCECF_LiveDB@txs.uscourts.gov
To:DC_Notices@localhost.localdomain
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:45109414@txs.uscourts.gov
Subject:Activity in Case 4:25-mj-00720 USA v. Austin Arrest - Rule 40
Content-Type: text/html
```

<div align="center">

**U.S. District Court**

**SOUTHERN DISTRICT OF TEXAS**

</div>

**Notice of Electronic Filing**

The following transaction was entered on 12/3/2025 at 9:37 AM CST and filed on 12/2/2025

| | |
|---|---|
| **Case Name:** | USA v. Austin |
| **Case Number:** | <u>4:25-mj-00720</u> |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Arrest (Rule 40) of Kelli Diann Austin, filed. (abb4)**

**4:25-mj-00720-1 Notice has been electronically mailed to:**

**4:25-mj-00720-1 Notice has not been electronically mailed to:**

```
MIME-Version:1.0
From:DCECF_LiveDB@txs.uscourts.gov
To:DC_Notices@localhost.localdomain
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:45109421@txs.uscourts.gov
Subject:Activity in Case 4:25-mj-00720 USA v. Austin Set/Reset Deadlines/Hearings
Content-Type: text/html
```

## U.S. District Court

## SOUTHERN DISTRICT OF TEXAS

### Notice of Electronic Filing

The following transaction was entered on 12/3/2025 at 9:38 AM CST and filed on 12/3/2025

| | |
|---|---|
| **Case Name:** | USA v. Austin |
| **Case Number:** | 4:25-mj-00720 |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Set Hearing as to Kelli Diann Austin: Initial Appearance - Rule 40 set for 12/3/2025 at 10:00 AM in Courtroom 701 before Magistrate Judge Christina A Bryan (abb4)**

**4:25-mj-00720-1 Notice has been electronically mailed to:**

**4:25-mj-00720-1 Notice has not been electronically mailed to:**

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno: Angela Zhu (212) 637-1027

# UNITED STATES DISTRICT COURT

United States Courts
Southern District of Texas
FILED

*December 03, 2025*

Nathan Ochsner, Clerk of Court

for the

## Southern District of New York

| United States of America | | |
|---|---|---|
| v. | ) | |
| KELLI DIANN AUSTIN | ) ) ) ) ) | Case No. **25 MAG 3441** |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   KELLI DIANN AUSTIN                                                              ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment       ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

     Conspiracy to commit wire fraud (18 U.S.C. Sec. 1349) and wire fraud (18 U.S.C. Sec. 1343)

Date:     10/29/2025                                         _____
                                                                                *Issuing officer's signature*

City and state:     New York, NY                          Hon. Barbara Moses, United States Magistrate Judge
                                                                                *Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* 10/29/25 , and the person was arrested on *(date)* 12/2/25 at *(city and state)* Houston, TX . |
| Date: 12/3/25                                         _____ *Arresting officer's signature* |
| Zachary Snyder FBI *Printed name and title* |

18

```
MIME-Version:1.0
From:DCECF_LiveDB@txs.uscourts.gov
To:DC_Notices@localhost.localdomain
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:45111236@txs.uscourts.gov
Subject:Activity in Case 4:25-mj-00720 USA v. Austin Arrest
```
Content-Type: text/html

## U.S. District Court

## SOUTHERN DISTRICT OF TEXAS

### Notice of Electronic Filing

The following transaction was entered on 12/3/2025 at 10:54 AM CST and filed on 12/3/2025

| | |
|---|---|
| **Case Name:** | USA v. Austin |
| **Case Number:** | <u>4:25-mj-00720</u> |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Arrest of Kelli Diann Austin, filed. (mem4)**

**4:25-mj-00720-1 Notice has been electronically mailed to:**

**4:25-mj-00720-1 Notice has not been electronically mailed to:**

19

```
MIME-Version:1.0
From:DCECF_LiveDB@txs.uscourts.gov
To:DC_Notices@localhost.localdomain
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:45111324@txs.uscourts.gov
Subject:Activity in Case 4:25-mj-00720 USA v. Austin Initial Appearance - Rule 5(c)(3)
Content-Type: text/html
```

## U.S. District Court

## SOUTHERN DISTRICT OF TEXAS

## Notice of Electronic Filing

The following transaction was entered on 12/3/2025 at 10:59 AM CST and filed on 12/3/2025

| | |
|---|---|
| **Case Name:** | USA v. Austin |
| **Case Number:** | 4:25-mj-00720 |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**INITIAL APPEARANCE IN RULE 5(c)(3) Minute Entry for proceedings held on 12/3/2025
before Magistrate Judge Christina A Bryan as to Kelli Diann Austin. Defendant first
appearance on Complaint from the New York Southern District Court 25-MJ-3441 and
advised of rights/charges. Defendant appeared with counsel. Order appointing FPD for
limited purpose, Order of Temporary Detention to be entered. Bond Hearing set for 12/3/2025
at 02:00 PM in Courtroom 701 before Magistrate Judge Christina A Bryan Defendant advised
of retained counsel in New York. Bond condtions to be set. Appearances: AUSA Francisco
Jose Rodriguez for USA; AFPD Devin Prater for Defendant.(ERO:Yes) (Interpreter: No)
(Pretrial Officer: Francesca Sonne) Defendant remanded to custody, filed. (mem4)**

**4:25-mj-00720-1 Notice has been electronically mailed to:**

**4:25-mj-00720-1 Notice has not been electronically mailed to:**

United States District Court
Southern District of Texas
**ENTERED**
December 03, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

UNITED STATES OF AMERICA    §
   §
*versus*    §      Case No. 4:25−mj−00720
   §
Kelli Diann Austin    §

## ORDER APPOINTING COUNSEL FOR LIMITED PURPOSE

     Because the Defendant, Kelli Diann Austin, has satisfied this court that (s)he is financially unable to employ counsel for initial appearance only and does not wish to waive counsel, and because the interests of justice so require, an attorney is hereby **APPOINTED** to represent Defendant in the above designated case for the **limited purpose of any hearing conducted in Houston, Texas**, and shall have no effect once the Defendant is transferred to the original court in the New York Southern District Court, New York Division. Once transferred, the original court must make a new determination on whether the Defendant satisfies the requirements for appointed counsel based on the information available to the court at that time.

### Attorney appointed: Federal Public Defender

     The appointment **SHALL** remain in effect until Defendant is transferred to the original jurisdiction and this case is terminated in the Southern District of Texas.

Signed on December 3, 2025.

Christina A. Bryan
United States Magistrate Judge

United States District Court
Southern District of Texas
**ENTERED**
December 03, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:25–mj–00720 |
| | § | |
| Kelli Diann Austin | § | |

## ORDER

In accordance with Federal Rule of Criminal Procedure 5(f), as amended by the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the Government is **ORDERED** to comply with the prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Government is also notified of the potential consequences of violating this Order and the disclosure obligations. The consequences include, but are not limited to, sanctions such as delaying trial or other proceedings, excluding evidence, giving adverse jury instructions, granting a new trial, dismissing the case, or finding the Government in contempt.

It is so **ORDERED**.

**SIGNED** on December 3, 2025.

Christina A. Bryan
United States Magistrate Judge

22

United States District Court
Southern District of Texas

**ENTERED**

December 03, 2025

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:25-mj-00720 |
| | § | |
| Kelli Diann Austin | § | |

## ORDER TO DETAIN A DEFENDANT TEMPORARILY UNDER 18 U.S.C. § 3142(d)

At the time of the alleged offense, the defendant was not a United States citizen or a person lawfully admitted for permanent residence, or, alternatively, the defendant was on release pending trial for a state or federal felony; on release after conviction for any type of offense, state or federal; or on probation or parole. This court finds that the defendant, if released, may flee or pose a danger to another person or the community.

**IT IS ORDERED:** The defendant must be detained temporarily under 18 U.S.C. § 3142(d) until the hearing in this case scheduled as follows: **Bond Hearing set for December 3, 2025 at 02:00 PM before Christina A Bryan.**

The attorney for the government is directed to notify the appropriate court, probation or parole officer, state or local law enforcement officer, or the United States Citizenship and Immigration Services so that a detainer may be placed on the defendant or custody may be transferred. If no action is taken by the above date, the defendant must be brought before this court on that date for further proceedings.

Date: December 3, 2025

Christina A. Bryan
United States Magistrate Judge

**Sealed documents are no longer available in CM/ECF or via PACER.**

**Please contact the court directly to request access to the document.**

**Reference for court use only**

https://storage.gtwy.dcn:8443/v1/file/txsd.9890917647.71947004.494434.json

```
MIME-Version:1.0
From:DCECF_LiveDB@txs.uscourts.gov
To:DC_Notices@localhost.localdomain
Bcc:
--Case Participants:
--Non Case Participants:
--No Notice Sent:

Message-Id:45116994@txs.uscourts.gov
Subject:Activity in Case 4:25-mj-00720 USA v. Austin Bond Hearing
Content-Type: text/html
```

## U.S. District Court

## SOUTHERN DISTRICT OF TEXAS

**Notice of Electronic Filing**

The following transaction was entered on 12/3/2025 at 4:37 PM CST and filed on 12/3/2025

| | |
|---|---|
| **Case Name:** | USA v. Austin |
| **Case Number:** | 4:25-mj-00720 |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 BOND HEARING Minute Entry for proceedings held on 12/3/2025 before Magistrate Judge Christina A Bryan as to Kelli Diann Austin. Defendant appeared with counsel. Bond set, $50,000 Unsecured Bond, Defendant advised of conditions of release, Defendant on bond to appear in originating district New York Southern District Court, New York Division for hearing set on at,, 500 Pearl Street, New York, NY 10007. Defendant given a bond and to be handed over to Chambers County pursuant to active arrest warrant. Appearances: AUSA Francisco Jose Rodriguez for USA; AFPD Devin Prater for Defendant.(ERO:Yes) (Interpreter: No) (Pretrial Officer: Francesca Sonne) Defendant remanded to custody, filed. (mem4)

4:25-mj-00720-1 Notice has been electronically mailed to:

4:25-mj-00720-1 Notice has not been electronically mailed to:

United States District Court
Southern District of Texas
**ENTERED**
December 03, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:25−mj−00720 |
| | § | |
| Kelli Diann Austin | § | |

## ORDER

In accordance with Federal Rule of Criminal Procedure 5(f), as amended by the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020), the Government is **ORDERED** to comply with the prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Government is also notified of the potential consequences of violating this Order and the disclosure obligations. The consequences include, but are not limited to, sanctions such as delaying trial or other proceedings, excluding evidence, giving adverse jury instructions, granting a new trial, dismissing the case, or finding the Government in contempt.

It is so **ORDERED**.

**SIGNED** on December 3, 2025.

Christina A. Bryan
United States Magistrate Judge

26

United States District Court
Southern District of Texas
**ENTERED**
December 03, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | Case No. 4:25-mj-00720 |
| | § | Charging District: |
| | § | New York Southern District Court |
| Kelli Diann Austin | § | Charging District's Case No. 25-MJ-3441 |

### ORDER REQUIRING DEFENDANT TO APPEAR IN THE DISTRICT WHERE CHARGES ARE PENDING AND TRANSFERRING BAIL

After a hearing in this court, the defendant is released from custody and ordered to appear in New York Southern District Court, the district court where the charges are pending, to answer those charges. If the time to appear in that court has not yet been set, the defendant must appear when notified to do so. Otherwise, the time and place to appear in that court are:

| Place: New York Southern District Court, New York Division 500 Pearl Street, New York, NY 10007 | Location: |
|---|---|
| | Date and Time: |

The clerk is ordered to transfer any bail deposited in the registry of this court to the clerk of the court where the charges are pending.

Date: 12/3/2025

_Christina A Bryan_
Christina A. Bryan
United States Magistrate Judge

27

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States of America )
v. )
**Kelli Austin** ) Case No.
_____ ) **4:25-mj-720**
*Defendant* )

## APPEARANCE BOND

### Defendant's Agreement

I, **Kelli Austin** _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ☒ ) to appear for court proceedings;

( ☒ ) if convicted, to surrender to serve a sentence that the court may impose; or

( ☒ ) to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ☐ ) (1) This is a personal recognizance bond.

( ☑ ) (2) This is an unsecured bond of $ **50,000** _____ .

( ☐ ) (3) This is a secured bond of $ _____ , secured by:

   ( ☐ ) (a) $ _____ , in cash deposited with the court.

   ( ☐ ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

    _____

    If this bond is secured by real property, documents to protect the secured interest may be filed of record.

   ( ☐ ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

    _____
    _____
    _____

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

28

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)    all owners of the property securing this appearance bond are included on the bond;

    (2)    the property is not subject to claims, except as described above; and

    (3)    I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.


I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C.§ 1746.)

Date: _12/3/25_        x _____
                                   *Defendant's signature*


_____      _____
*Surety/property owner – printed name*      *Surety/property owner – signature and date*


_____      _____
*Surety/property owner – printed name*      *Surety/property owner – signature and date*


_____      _____
*Surety/property owner – printed name*      *Surety/property owner – signature and date*


                              CLERK OF COURT

Date: _12/3/25_        _____
                                *Signature of Clerk or Deputy Clerk*

Approved.

Date: _12/3/2025_        _____
                                   *Judge's signature*

AO 199A (Rev. 06/19)  Order Setting Conditions of Release

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| **Kelli Austin** | ) |
|  | ) |
| *Defendant* | ) |

Case No. **4:25 MJ-720**

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)  The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____
*Place*

on _____
*Date and Time*

If blank, defendant will be notified of next appearance.

(5)  The defendant must sign an Appearance Bond, if ordered.

AO 199B (Rev. 09/24) Additional Conditions of Release

Page ___ of ___ Pages

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ )  (6)  The defendant is placed in the custody of:

Person or organization  _____
Address *(only if above is an organization)*  _____
City and state  _____  Tel. No.  _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed:  _____   _____
                                    Custodian                                    Date

( ☑ )  (7)  The defendant must:

( ☑ )  (a)  submit to supervision by and report for supervision to the **Pretrial Services NDTX** ,
            telephone number  _____ , no later than  _____ .

( ☑ )  (b)  continue or actively seek employment.

( ☐ )  (c)  continue or start an education program.

( ☑ )  (d)  surrender any passport to:

( ☑ )  (e)  not obtain a passport or other international travel document.

( ☑ )  (f)  abide by the following restrictions on personal association, residence, or travel: **Comanche County; SDNY and Chambers County; Colorado for doctor appointment**

( ☐ )  (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:  _____

( ☐ )  (h)  get medical or psychiatric treatment:  _____

( ☐ )  (i)  return to custody each  _____ at  _____ o'clock after being released at  _____ o'clock for employment, schooling, or the following purposes:  _____

( ☐ )  (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ☑ )  (k)  not possess a firearm, destructive device, or other weapon.

( ☐ )  (l)  not use alcohol ( ☐ ) at all ( ☐ ) excessively.

( ☑ )  (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. **No CBD Products**

( ☐ )  (n)  submit to testing for a prohibited substance, if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, wearing a sweat patch, submitting to a breathalyzer, and/or any other form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of substance screening or testing of prohibited substances.    No CBD Products.

( ☐ )  (o)  participate in a program of inpatient or outpatient substance use treatment, if directed by the pretrial services office or supervising officer.

( ☐ )  (p)  participate in the remote alcohol testing program using continuous electronic alcohol testing and comply with its requirements as directed, including not consuming alcohol.

( ☐ )  pay all or part of the cost of remote alcohol testing, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer.

( ☐ )  (q)  participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

i.  Following the location restriction component (check one):

( ☐ )  (1)  **Curfew.** You are restricted to your residence every day ( ☐ ) from  _____ to  _____ , or ( ☐ ) as directed by the pretrial services office or supervising officer; or

( ☐ )  (2)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the pretrial services office or supervising officer; or

( ☐ )  (3)  **Home Incarceration.** You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or activities specifically approved by the court; or

( ☐ )  (4)  **Stand-Alone Monitoring.** You have no residential component (curfew, home detention, or home incarceration) restrictions. However, you must comply with the location or travel restrictions as imposed by the court. **Note:** Stand-alone monitoring should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

31

AO 199B (Rev. 09/24) Additional Conditions of Release                    Page ___ of ___ Pages

## ADDITIONAL CONDITIONS OF RELEASE

(ii) submit to the following location monitoring technology (check one):

( [ ] ) (1)   Location monitoring technology as directed by the pretrial services or supervising officer; or

( [ ] ) (2)   GPS; or

( [ ] ) (3)   Radio Frequency; or

( [ ] ) (4)   Voice Recognition; or

( [ ] ) (5)   Virtual Mobile Application. You must allow the pretrial services or supervising officer to conduct initial and periodic inspections of the mobile device and mobile application to verify that 1) the monitoring software is functional, 2) the required configurations (e.g., locational services) are unaltered, and 3) no efforts have been made to alter the mobile application.

(iii) ( [ ] ) pay all or part of the cost of location monitoring, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer

( [✓] ) (r)   report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops. Within 72 hours.

( [✓] ) (s)   Prohibited from making application for any federally funded loan application or any conduct alleged in Indictment

☑ Prohibited from acquiring any new debt or lines of credit without the approval of US Probation.

☑ Defendant is to provide current bank statements for any bank accounts associated with her name and her business account to US Probation.

☑ Affidavit regarding loss passport to be submitted to US Probation and Dept of State.

32

AO 199C  (Rev. 09/08)  Advice of Penalties

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more -- you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years -- you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony -- you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor -- you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

### Directions to the United States Marshal

(   ) The defendant is ORDERED released after processing.

(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:  12/3/2025

_____
*Judicial Officer's Signature*

_____ Christina A. Bryan, United States Magistrate Judge _____
*Printed name and title*

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

33

AO 199A (Rev. 06/19) Order Setting Conditions of Release                                    Page 1 of _____ Pages

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br><u>Kelli Austin</u><br><div align="center">*Defendant*</div> | )<br>)<br>)<br>)<br>) |

Case No. **4:25 MJ-720**

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)  The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____

<div align="center">*Place*</div>

on _____

<div align="center">*Date and Time*</div>

If blank, defendant will be notified of next appearance.

(5)  The defendant must sign an Appearance Bond, if ordered.

34

AO 199B (Rev. 09/24) Additional Conditions of Release

Page ____ of ____ Pages

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

　　IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ )　(6)　The defendant is placed in the custody of:
　　　　　Person or organization _____
　　　　　Address *(only if above is an organization)* _____
　　　　　City and state _____ Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

　　　　　　　　　　　　　　　　Signed: _____ _____
　　　　　　　　　　　　　　　　　　　　　　　　*Custodian*　　　　　　　　　　　*Date*

( ☑ )　(7)　The defendant must:
　( ☑ )　(a)　submit to supervision by and report for supervision to the **Pretrial Services NDTX** ,
　　　　　　telephone number _____ , no later than _____ .
　( ☑ )　(b)　continue or actively seek employment.
　( ☐ )　(c)　continue or start an education program.
　( ☑ )　(d)　surrender any passport to: _____
　( ☑ )　(e)　not obtain a passport or other international travel document.
　( ☑ )　(f)　abide by the following restrictions on personal association, residence, or travel: **Comanche county; SDNY and Chambers county; Colorado for doctor appointment**
　( ☐ )　(g)　avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: _____
　( ☐ )　(h)　get medical or psychiatric treatment: _____
　( ☐ )　(i)　return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____
　( ☐ )　(j)　maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.
　( ☑ )　(k)　not possess a firearm, destructive device, or other weapon.
　( ☐ )　(l)　not use alcohol ( ☐ ) at all ( ☐ ) excessively.
　( ☑ )　(m)　not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. **No CBD Products**
　( ☐ )　(n)　submit to testing for a prohibited substance, if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, wearing a sweat patch, submitting to a breathalyzer, and/or any other form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of substance screening or testing of prohibited substances.　No CBD Products.
　( ☐ )　(o)　participate in a program of inpatient or outpatient substance use treatment, if directed by the pretrial services office or supervising officer.
　( ☐ )　(p)　participate in the remote alcohol testing program using continuous electronic alcohol testing and comply with its requirements as directed, including not consuming alcohol.
　　　　　( ☐ )　pay all or part of the cost of remote alcohol testing, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer.
　( ☐ )　(q)　participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

　　　　i. Following the location restriction component (check one):
　　　　( ☐ ) (1)　**Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____ , or ( ☐ ) as directed by the pretrial services office or supervising officer; or
　　　　( ☐ ) (2)　**Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the pretrial services office or supervising officer; or
　　　　( ☐ ) (3)　**Home Incarceration.** You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or activities specifically approved by the court; or
　　　　( ☐ ) (4)　**Stand-Alone Monitoring.** You have no residential component (curfew, home detention, or home incarceration) restrictions. However, you must comply with the location or travel restrictions as imposed by the court. **Note:** Stand-alone monitoring should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

AO 199B (Rev. 09/24) Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

(ii) submit to the following location monitoring technology (check one):

    ( ☐ ) (1)   Location monitoring technology as directed by the pretrial services or supervising officer; or

    ( ☐ ) (2)   GPS; or

    ( ☐ ) (3)   Radio Frequency; or

    ( ☐ ) (4)   Voice Recognition; or

    ( ☐ ) (5)   Virtual Mobile Application. You must allow the pretrial services or supervising officer to conduct initial and periodic inspections of the mobile device and mobile application to verify that 1) the monitoring software is functional, 2) the required configurations (e.g., locational services) are unaltered, and 3) no efforts have been made to alter the mobile application.

(iii)  ( ☐ ) pay all or part of the cost of location monitoring, including equipment loss or damage, based upon your ability to pay, as determined by the pretrial services or supervising officer

( ☑ ) (r)  report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops. Within 72 hours.

( ☑ ) (s)  Prohibited from making application for any federally funded loan application or any conduct alleged in Indictment

☑ Prohibited from acquiring any new debt or lines of credit without the approval of US Probation.

☑ Defendant is to provide current bank statements for any bank accounts associated with her name and her business account to US Probation.

☑ Affidavit regarding loss passport to be submitted to US Probation and Dept of State.

AO 199C (Rev. 09/08) Advice of Penalties                                    Page _____ of _____ Pages

# ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Defendant's Signature

1201 CR 266   Gustine Tx   76455
_____
City and State

## Directions to the United States Marshal

(   ) The defendant is ORDERED released after processing.

(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:   12/3/2025
_____
Judicial Officer's Signature

Christina A. Bryan, United States Magistrate Judge
_____
Printed name and title

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL